**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 09-80767-CIV-RYSKAMP**
**(06-CR-80187-RYSKAMP)**

**CHRISTOPHER WILLIAM COOK,**
        **Movant,**

**vs.**

**UNITED STATES OF AMERICA,**
        **Respondent.**
_____/

## GOVERNMENT'S RESPONSE TO MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its response to Movant's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. §2255.  For the reasons set forth below, the motion should be dismissed.

### PROCEDURAL HISTORY

On November 20, 2006, the Government filed a complaint charging Steven Michael May, Joseph John Vaquera, and Christopher William Cook with mail fraud, in violation of 18 U.S.C. § 1341 (DE 1).  Thomas C. Gano, Esq. represented Cook at his initial appearance and filed a notice of permanent appearance on behalf of Cook on December 11, 2006 (DE 7, 37).  On December 1, 2006, a federal grand jury in the Southern District of Florida returned an indictment against May, Vaquera and Cook, charging them with four counts of mail fraud in violation of 18 U.S.C. § 1341 (DE 17).  On February 2, 2007, Cook pled guilty to one count of mail fraud (Count One), pursuant to a plea agreement with the United States (DE 51).  Cook's sentencing was set for April 13, 2007 (DE 52).

During the year following his guilty plea, Cook moved to continue his sentencing **five** times,

each time claiming that he could not proceed with sentencing because of medical problems related to injuries he sustained in a 2004 car accident (DE 63, 83, 88, 93, 98).[1] The Government did not oppose these motions for continuance of sentencing. The Court granted four of Cook's motions (DE 64, 85, 89, 94), but denied the sixth (DE 99) and scheduled the sentencing hearing for February 29, 2008. On March 21, 2007, Cook filed objections to the Presentence Investigation Report (PSR) (DE 65). On February 28, 2008, the day before his sentencing hearing, Cook's attorney, Thomas Gano, Esq., filed a motion for limited appearance and consent to designation for Alan Ellis, Esq. to appear as co-counsel in the case (DE 101). The Court granted this motion on March 3, 2008 (DE 102).

The sentencing hearing was held on February 29, 2008 (DE 100), one full year after Cook's guilty plea. Thomas Gano, Esq. was the only attorney who appeared on behalf of Cook at the sentencing hearing (DE 104). At the hearing, Cook's attorney renewed his motion for a continuance claiming that (1) Cook needed additional time to complete certain necessary medical treatment, and (2) that Cook needed additional time for his newly hired co-counsel to get up to speed on the case. The Court denied Cook's motion for a continuance, but agreed to give him additional time to report for service of his sentence (DE 103, 104).

At the sentencing hearing, the Court determined that Cook's total offense level was 22, and his criminal history category 1, resulting in an advisory guideline range of 41 to 51 months (DE 104:8). Cook, Cook's father, and Cook's fiancé all testified on his behalf (DE 104:9-14). At the conclusion of the testimony, Cook's counsel argued for a sentence "below the applicable guideline

---

[1] The accident, which occurred during the offense, resulted from Cook's "driving his Lamborghini at a high rate of speed, apparently while under the influence of alcohol." PSR at ¶47. As a result of the accident, Cook was hospitalized for four months, after which, he resumed his participation in the fraud. The fraud continued until November 2006, when May, Vaquera and Cook were arrested.

range," citing Cook's high school academic honors, his youth, his bad judgment, and his medical problems as mitigating factors (DE 104:15-17). The Court found that Cook had not "offered any rational explanation" for a downward departure and imposed a sentence of 41 months' imprisonment, three years' supervised release, and $1,856,466.12 in restitution (DE 100, 104:19-20). The Court further ordered that Cook voluntarily surrender to the United States Marshals on April 29, 2008 (DE 103).

Between April 22, 2008 and April 23, 2009, Cook filed **six** emergency motions to delay his surrender date, claiming in each motion that his medical condition required close monitoring by his Miami physician (DE 105, 111, 113, 115, 118, and 121). Each of these motions was filed by Cook's new attorney, Robert E. Stone, Esq. Based on Cook's representations that his medical condition would greatly deteriorate if his Miami physician were not able to complete his treatment, the Government did not oppose the first five motions to delay Cook's surrender date, and the court granted these motions (DE 109, 112, 114, 117, 120). The Government filed a written response opposing Cook's sixth motion to delay his surrender (DE 122).[2] On April 29, 2009, the Court denied Cook's sixth motion to delay his surrender date (DE 124), and ordered Cook to surrender on April 29, 2009. Cook began serving his sentence on April 29, 2009.

Cook did not file a direct appeal. On May 18, 2009, Cook filed the instant motion to vacate, correct or set aside his sentence, pursuant to Title 28, United States Code, Section 2255.

---

[2] The Government opposed Cook's sixth motion based on assurances by the Bureau of Prisons Regional Medical Director that she had reviewed Cook's medical records and was confident that the Bureau could provide appropriate medical care for Cook (DE 122: Attachment 1).

**THE OFFENSE CONDUCT[3]**

Between approximately July 2003 and November 2006, the defendants, May, Vaquera and Cook participated in a scheme to defraud by obtaining money and property from retail businesses throughout the United States under false pretenses (PSI at ¶7).

Beginning in about April 2003, May, Vaquera, and Cook began incorporating businesses located throughout the United States. The corporations were shell companies which performed little or no legitimate business. The defendants typically listed themselves as the corporate officers for these companies, using either their full names or some variation of their names. The defendants also opened corporate bank accounts to receive the fraudulent proceeds (PSI at ¶8).

The defendants leased virtual offices for each business in the state in which it was incorporated. The virtual office suites provided the defendants with addresses and telephone numbers so it would appear as if the businesses were legitimate entities, when, in fact, they were not. The leases for the virtual offices were usually negotiated via e-mail, signed by one of the defendants, and then returned by facsimile (PSI at ¶9).

The defendants then applied for business-to-business lines of credit with retail companies throughout the United States, via facsimile or e-mail. When applying for credit, the defendants provided the victim businesses with false financial information and fraudulent trade references. In almost all instances, the trade references were companies established by one or more of the defendants, and the telephone and fax numbers provided for these companies were numbers controlled by the defendants. In this way, the defendants were able to respond to credit inquiries by

---

[3] The offense conduct is taken from the PSR. The Government has filed a motion to permit the Probation Office to provide United States Magistrate Judge Ann E. Vitunac with a copy of the PSR and all addendums and revisions thereto.

the victim businesses. All three defendants participated in preparing and forging the names of fictitious persons on the fraudulent trade references. The fraudulent references were then faxed by the defendants to the victims companies (PSI at ¶10).

The defendants also provided fraudulent bank references. In most instances, the names and addresses provided for the bank references were correct, but the telephone and facsimile numbers were not. Like the contact information for the trade references, the telephone and fax numbers provided for the bank references were numbers controlled by the defendants. The financial information provided by the defendants was also fraudulent. The financial statements were completely fabricated. Many of the financial statements were virtually identical, with only some numbers on each statement differing. Some of the financial statements provided for different companies were identical (PSI at ¶11).

Based on the fraudulent financial information and references, the victim businesses extended credit to the defendants' companies. The defendants then placed orders for high-end merchandise, including computer monitors, flat-screen televisions, DVD players, camcorders, electronic equipment, and cameras. They directed the victim businesses to ship the merchandise to the virtual office suites, or to commercial mailboxes or storage facilities leased by the defendants. Three of the storage units were leased by defendant May, two of the commercial mailboxes and several of the storage units were leased by Vaquera and one of the commercial mailboxes was leased by Cook. To conceal their involvement in the scheme and to frustrate the victim businesses' efforts to locate them, the defendants had the victim businesses ship merchandise to a commercial mailbox or virtual office located in one state and then had the commercial mailbox or virtual office immediately re-ship the goods to a different commercial mailbox, virtual office or storage facility located in Palm Beach

County (PSI at ¶12).

After the merchandise was shipped, the victim businesses sent invoices to the defendants' companies requesting payment. The defendants did not remit any payments to the victim businesses. Instead, the defendants ignored the billing notices or sent "lulling" e-mails in which they promised to pay; however, no payments were ever made (PSI at ¶14).

The fraudulently obtained merchandise was either sold, given away or kept by the defendants. Beginning in September 2004, all three defendants began selling the fraudulently obtained merchandise on eBay. May and Vaquera used their own eBay accounts, while Cook used a friend's eBay account. The merchandise was typically advertised as "brand new, never opened, never used." Many of the checks and money orders obtained from the eBay customers were cashed by the defendants at check cashing stores. While Cook did not personally cash many of the eBay customer checks, he received a share of the proceeds of these checks from May. In addition, Cook sold stolen merchandise on a friend's eBay account. His friend deposited the eBay customer checks in his bank account and then paid Cook the cash (PSI at ¶15).

The defendants also used fraudulently obtained gift card from Tiffany and Company and Saks to purchase jewelry and luxury items. Specifically, Cook used gift cards fraudulently obtained from Tiffany and Company and Saks to purchase a $9,600 engagement ring, which he later returned; a $15,000 engagement ring; two diamond necklaces; and several watches. Cook also gave his father several stolen routers valued at $35,000 each and sold other stolen routers to his former employer. Cook also leased a Hummer for $1,000 per month, in which he installed approximately $20,000 worth of stolen electronic and computer equipment (PSI at ¶16).

During the course of the scheme, the defendants defrauded more than 40 businesses,

including L.L. Bean, The Sharper Image, Tiffany and Co., Saks, Cabela's Inc., and Electronic Systems, Co., of approximately $2.1 million.

## ISSUES RAISED BY THE INSTANT PETITION

In his motion, Cook sets forth one ground for his sentence to be vacated, set aside, or corrected: "Defendant's counsel, Mr. Thomas C. Gano, rendered constitutionally ineffective assistance because he was unprepared to conduct a sentencing hearing on February 29, 2008." (Cv-DE:1:2). Specifically, Cook argued that Mr. Gano had failed to present information at Cook's sentencing hearing concerning the following matters: (1) the "severity of [Cook's] medical situation," (2) "restitution," (3) "community service," and (4) "costs of care to the Government (Cv-DE1:6-7)."

## MEMORANDUM OF LAW

In Section 105 of AEDPA,[4] Congress established a "1-year period of limitations" governing motions for collateral relief under Section 2255.[5]   The one-year period runs from "the last of" four specified events: (1) "the date on which the judgment of conviction becomes final"; (2) "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"; (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (4) "the date on which the facts

---

[4]     The Antiterrorism and Effective Death Penalty Act of 1996.

[5]     In *Hunter v. United States*, 1996 WL 706706 (11th Cir. December 10, 1996) (en banc), the Court ruled that the AEDPA applies to all Section 2255 cases in which no notice of appeal has been filed before the Act's effective date (April 24, 1996).

supporting the claim or claims presented could have been discovered through the exercise of due diligence."

Under subsection (1) of the statute, petitioner's conviction became "final" on March 17, 2008.[6]  When a defendant does not pursue a direct appeal, his conviction becomes "final," for purposes of 28 U.S.C. § 2255, when the time for filing a direct appeal expires.  Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).  The time for filing a direct appeal expires ten days after the district court enters its judgment and sentence.  Fed. R. App. P. 4(b)(1)(i).  A judgment is "entered" when it is entered on the docket by the Clerk of Court.  Fed. R. App. P. 4(b)(6).  In the instant case, Cook's judgment was entered on the docket on March 3, 2008.  Therefore, Cook's conviction became final ten days later, on March 17, 2008,[7] and his one-year limitations period began to run on March 18, 2008.  Accordingly, Cook was required to file his §2255 petition  by **no later than March 18, 2009**.[8]  Instead, Cook filed his petition on **May 18, 2009** – two months after the period of limitations had run.  Accordingly, this court should not consider Cook's claims.

While the Eleventh Circuit has recognized that AEDPA's one-year statute of limitations can,

---

[6]        The finality of Cook's conviction is the only applicable date of the four statutory dates in Section 2255.  Cook does not allege that an unconstitutional or unlawful act by the government prevented him from filing his Section 2255 motion or that a newly recognized right established by the Supreme Court is retroactively applicable to his case.  Nor does Cook allege that the statute of limitations should run from the date on which he discovered, through the exercise of due diligence, the facts supporting his claim.

[7]        When computing time for periods less than 11 days, weekends and holidays are excluded.  Fed.R.App.P. 26.

[8]        The Eleventh Circuit has determined that the last day of the one-year statute of limitations for the purposes of Section 2255 petitions falls on the 366th day.  Wainwright v. Sec'y. D.O.C., 537 F.3d 1282, 1283-84 (11th Cir. 2007); Sanchez v. United States, 170 Fed. Appx. 643, 645-46 (11th Cir. 2006).

under certain circumstances, be tolled, such equitable tolling is not justified in this case.  The

doctrine of equitable tolling is an extraordinary remedy which applies when a petitioner "untimely

files [a §2255 motion] because of extraordinary circumstances that are both beyond his control and

unavoidable even with diligence."  Sandvik v. United States, 177 F.3d 1269, 1271 (11ᵗʰ Cir. 1999).

In Miller v. Crosby, 180 Fed. Appx. 126 (11ᵗʰ Cir. 2006), the Eleventh Circuit discussed the

parameters for equitable tolling of the AEDPA's statute of limitations:

> AEDPA's statute of limitations can be equitably tolled where a petitioner untimely files
> because of extraordinary circumstances that are both beyond his control and unavoidable
> even with diligence.  In such a case, the petitioner bears the burden of showing that equitable
> tolling is warranted.

Id. At 128.  The petitioner bears the burden of showing **specific facts** to support his claim of

extraordinary circumstances and due diligence.  Akins v. United States, 204 F.3d 1086, 1089-90 (11ᵗʰ

Cir. 2000).

Courts have strictly applied the equitable tolling doctrine, declining to toll the limitations

period for even a few days when the petitioner has failed to set forth extraordinary circumstances.

Sandvik v. United States, 177 f.3d 1269 (11ᵗʰ Cirl 1999) (Court denied equitable tolling when

petitioner was only one day out of time); Close v. Estes, 336 F.3d 1282 (11ᵗʰ Cir. 2003) (Court

denied equitable tolling when petitioner filed 2255 petition three days after limitations period had

expired.).

In the instant case, Cook has completely failed to meet his burden of establishing

extraordinary circumstances and due diligence.  Indeed, Cook has not set forth a single fact which

would justify his failure to timely file his petition.  To the contrary, he does not even acknowledge

that his motion was untimely filed, claiming instead that "This motion is filed timely, as the

Defendant was sentenced on February 29, 2008." (Cv - DE 1:4¶18).

In any event, it appears that Cook's failure to timely file the instant motion resulted from mere negligence, rather than extraordinary circumstances beyond Cook's control and unavoidable even with diligence.  Cook was represented by counsel for the entire one-year period of limitations. During that period, Cook's new attorney, Robert E. Stone, filed six motions on Cook's behalf; notably, none of these motions raised the instant ineffective assistance of counsel claim.  In addition, all of the information offered in support of Cook's instant §2255 motion was available to Cook during the one-year limitations period.  For example, the sentencing transcript was prepared by March 11, 2008, and records relating to Cook's medical condition, earning potential and community service were easily obtainable during that first year.  Finally, the fact that Cook was not in actual, physical custody during the limitations period would not have prevented him from filing his §2255 motion.  The Supreme Court has held that a person released on personal recognizance is "subject to restraints 'not shared by the public generally,'" and therefore is considered to be "in custody" for the purposes of the federal habeas statutes.  Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571 (1973) quoting Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373 (1963).

Mere neglect in diligently pursuing claims is not the kind of "extraordinary circumstances" required to toll the statute of limitations.  Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Equitable tolling is not available for a "garden variety claim of excusable neglect."  Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990); Bryant v. United States Department of Agriculture, 967 F.2d 501, 504 (11th Cir. 1992) ("We have found no case in which the actions or inactions of the plaintiff alone have provided a basis for the application of equitable tolling to a limitations period.").  Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001) ("Equitable

tolling applies principally where the plaintiff . . . is prevented in some extraordinary way from asserting his rights.")  Allowing mere neglect to toll the statute of limitations would defeat the fundamental purpose of the AEDPA, which was to establish finality in post-conviction proceedings. Duncan v. Walker, 533 U.S. 167, 178 (2000).  In this case, Cook's motion is two months beyond the limitations period.  Since Cook has not alleged any facts to establish that his delay was beyond his control and unavoidable even with due diligence, his motion should be dismissed.

Finally, even if Cook's motion were timely filed, this Court is without jurisdiction to consider his ineffective assistance of counsel claim.  Section 225 provides four grounds upon which a person may challenge his sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose such sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Sentences imposed within the statutory limits may not be reviewed under §2255.  Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1983); Nelson v. United States, 709 F.2d 39, 40 (11th Cir. 1983).   Cook's sentence of 41 months was well within the twenty year maximum sentence permitted by law for the offense of mail fraud.  Therefore, this Court is without jurisdiction to consider Cook's motion.

### EVIDENTIARY HEARING IS NOT NECESSARY TO RESOLVE THIS PETITION

When a movant files a 2255 motion and the files and records of the case conclusively show that the petitioner is not entitled to relief, there is no need for an evidentiary hearing.  28 U.S.C. § 2255; Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984).  A district court is required to hold an evidentiary hearing on a 2255 petition only if a petitioner "alleges facts that, if true, would entitle him to relief."  Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citations omitted)

("The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege- not prove- reasonably specific, non-conclusory facts that, if true, would entitle him to relief."); <u>Lynn v. United States</u>, 365 F.3d 1225, 1238-39 (11th Cir. 2004) (holding that a district court was not required to hold an evidentiary hearing based on Section 2255 petitioner's mere conclusory allegations in affidavit).

In the instant case, Cook has failed to allege **any** facts which would entitle him to relief. That is, even if you assume that every fact alleged by Cook were true, he is still not entitled to relief. Where a petitioner fails to allege reasonably specific facts which, if true, would entitle him to relief, then an evidentiary hearing is not required.

### CONCLUSION

Cook's claims are time barred and therefore his Motion should be dismissed.

**WHEREFORE**, the United States of America respectfully request that this Court dismiss Cook's Motion to Vacate, Correct or Set Aside Sentence.[9]

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: <u>s/Adrienne Rabinowitz</u>
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 833654; Adrienne.Rabinowitz@usdoj.gov
500 Australian Avenue
West Palm Beach, FL 33401
Tel: 561-820-8711; Fax: 561-659-4526

---

[9]    If the Court determines that petitioner's claims are not time barred, then the United States will file a supplemental answer addressing the merits of Cook's claims.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 7, 2009, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/Adrienne Rabinowitz
ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

-13-

**SERVICE LIST**
**CHRISTOPHER COOK v. UNITED STATES OF AMERICA**
**Case No. 09-80767-CIV-RYSKAMP**
**(06-80187-RYSKAMP)**
**United States District Court, Southern District of Florida**


Robert E. Stone, Esq.
Bobstone@verolegal.com
2145 14th Avenue, Suite 6
Vero Beach, FL 32960
Telephone: 772-567-2261
Facsimile: 772-567-2440
Attorney for Defendant Christopher Cook
[Service via CM/ECF]